## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEROLD WASHINGTON,** | : | **Civil Action No. 02-4451** |
| | : | |
| **Plaintiff,** | : | **The Honorable Clifford Scott Green** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONAL RAILROAD PASSENGER** | : | |
| **CORPORATION D/B/A AMTRAK,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### ORDER

AND NOW, this __ day of _____, 2003, upon consideration of Defendant's

Motion for Leave to File a Reply Memorandum in Further Support of It's Motion for Summary

Judgment, and any response thereto, it is hereby **ORDERED** that Defendant's Motion is

**GRANTED**, and the Clerk shall docket the Reply Memorandum attached to Defendant's Motion

at Tab 1.

BY THE COURT:

_____
Green, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEROLD WASHINGTON, | : | Civil Action No. 02-4451 |
| | : | |
| Plaintiff, | : | The Honorable Clifford Scott Green |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION D/B/A AMTRAK, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANTS' MOTION FOR LEAVE TO FILE A REPLY MEMORANDUM
## IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant National Passenger Railroad Corporation ("Amtrak") requests that this Court enter an Order granting it leave to file the attached Reply Memorandum in Further Support of Its Motion for Summary Judgment. In support of the foregoing, Amtrak avers as follows:

1.     On October 30, 2003, Amtrak filed its Motion for Summary Judgment seeking dismissal, with prejudice, of Plaintiff Jerold Washington's entire Complaint and Amended Complaint.

2.     Plaintiff's over 50-page Opposition to Defendant's Motion for Summary Judgment, filed on November 12, 2003, misrepresents the factual record and relevant legal issues in this case.

3.     Amtrak's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment (attached hereto at Tab 1) is narrowly focused and specifically addresses the legal deficiencies and factual misrepresentations made in Plaintiff's Opposition. Courts in this district have consistently permitted reply briefs that do not merely restate prior arguments

but are necessary to respond to specific arguments made in a responsive brief. <u>Wolk v. Cohen</u>,

No. 94-5096, 1995 WL 314508, at *2 (E.D. Pa. May 22, 1995) (concluding that reply brief was

proper where it specifically addressed the "fallacies of plaintiffs' arguments," was limited in

length, and cited relevant case law); <u>Warren v. Cheltenham Twp.</u>, No. 94-4999, 1995 WL

732804, at *4 n. 3 (E.D. Pa. Nov. 13, 1995) (holding that reply brief was appropriate to respond

to specific issues raised in responsive brief).

       **WHEREFORE**, for all the foregoing reasons, Amtrak respectfully requests that

the Court grant its Motion for Leave to File a Reply Memorandum in Further Support of Its

Motion for Summary Judgment.

Respectfully,

Judith E. Harris, Esquire ( I.D. #02358)
William J. Delany (I.D. #74864)
Paul C. Evans (I.D. #84535)
1701 Market Street
Morgan, Lewis & Bockius LLP
Philadelphia, Pennsylvania 19103
(215) 963-5000

Attorneys for Defendant
National Railroad Passenger Corporation

Dated:  November 26, 2003

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November, 2003, true and correct copies

of the attached Motion for Leave to File a Reply Memorandum in Further Support of Amtrak's

Motion for Summary Judgment was served, via first class mail, upon the following:

Armando A. Pandola, Jr., Esquire
400 Sterling Commerce Center
1819 JFK Blvd.
Philadelphia, PA 19103

Attorney for Plaintiff

Paul C. Evans

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JEROLD WASHINGTON, | : | Civil Action No. 02-4451 |
|  | : |  |
| Plaintiff, | : | The Honorable Clifford Scott Green |
|  | : |  |
| v. | : |  |
|  | : |  |
| NATIONAL RAILROAD PASSENGER | : |  |
| CORPORATION D/B/A AMTRAK, | : |  |
|  | : |  |
| Defendant. | : |  |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Judith E. Harris, Esquire ( I.D. #02358)
William J. Delany (I.D. #74864)
Paul C. Evans (I.D. #84535)
1701 Market Street
Morgan, Lewis & Bockius LLP
Philadelphia, Pennsylvania 19103
(215) 963-5000

Attorneys for Defendant National Railroad
Passenger Corporation

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

    A.    The Court Should Dismiss Plaintiff's Racial Harassment Claims Because Plaintiff Has Adduced No Evidence To Support A Finding Of Respondeat Superior Liability. ........................................................................................ 2

        1.    Amtrak's Policy Against Harassment Is Effectively Enforced Throughout The Company And, Specifically, At Its Lancaster Division........................................................................................ 3

        2.    Amtrak Responded Promptly With Effective Remedial Action To Plaintiff's Only Complaint Of Discrimination. ......................................... 5

        3.    Plaintiff Has Adduced No Evidence Of Harassment By Any Amtrak Supervisor. ................................................................ 9

        4.    Plaintiff Cannot Assert A Viable Cause Of Action For Constructive Discharge. ......................................................... 12

    B.    The Court Should Grant Summary Judgment On The Disparate Impact Claim In Count IV Of Plaintiff's Complaint Because Plaintiff Has Abandoned That Claim. ......................................................................... 14

    C.    The Court Should Grant Summary Judgment On Plaintiff's Discrimination Claims. ......................................................................... 14

        1.    The Boom Truck Position. ................................................... 15

            a)    Plaintiff Did Not Properly Bid For The Boom Truck Driver Position. ................................................................. 15

            b)    Plaintiff Does Not Dispute That His Failure To Receive The Boom Truck Position Was Without Consequence. .............. 16

        2.    The Assistant Engineer Positions........................................... 17

III.  CONCLUSION ................................................................................................. 20

i

## TABLE OF AUTHORITIES

Page

### CASES

Bullock v. Childrens Hosp. of Philadelphia,
71 F.Supp.2d 482 (E.D. Pa. 1999) ...........................................................................20

Cohen v. Pitcairn Trust Co.
No Civ. A. 99-5441, 2001 WL 873050 (E.D. Pa. June 20, 2001) ................................19

Fallon v. Meissner,
No. 02-1823, 2003 WL 1984696 (3rd Cir. April 30, 2003)...........................................16

Fuentes v. Perskie,
32 F.3d 759 (3d Cir. 1994)...........................................................................................19

Glickstein v. Neshaminy School District,
1999 WL 58578 (E.D. Pa. Jan. 26, 1999) ...................................................................10

Kent v. Henderson,
77 F.Supp.2d 628 (E.D. Pa. 1999) ................................................................................9

Knabe v. Boury Corp.,
114 F.3d 407 (3d Cir. 1997)........................................................................................2, 6

Koschoff v. Henderson,
109 F.Supp.2d 332 (E.D. Pa. 2000), aff'd. 2002 WL 1271631 (3rd Cir. 2002) ..............9

Kunin v. Sears Roebuck & Co.,
175 F.3d 289 (3d Cir. 1999).........................................................................................6

Maher v. Associated Services for the Blind,
929 F. Supp. 809 (E.D. Pa. 1996) ..............................................................................13

Pollock v. American Telegraph & Telegraph Long Lines,
794 F.2d 860 (3rd Cir. 1986) ......................................................................................18

Porchia v. Cohen,
No. Civ. A. 98-3643, 1999 WL 357352 (E.D. Pa. 1999) .........................................6, 13

Sheridan v. E.I. DuPont de Nemours and Co.,
100 F.3d 1061 (3d Cir. 1996).....................................................................................13

Shramban v. Aetna,
262 F.Supp.2d 531 (E.D. Pa.  2003) ..........................................................................16

ii

# TABLE OF AUTHORITIES

**Page**

Sicalides v. Pathmark Stores, Inc.,
No. Civ. A. 99-CV-3465, 2000 WL 760439 (E.D. Pa. Jun 12, 2000)............................................9

Suders v. Easton,
325 F.3d 432 (3d Cir. 2003)......................................................................................................12

Weston v. Pennsylvania,
251 F.3d 427 (3d Cir. 2001)........................................................................................................2

Williams v. Caruso,
966 F. Supp. 287 (D. Del. 1997)................................................................................................14

Wragg v. Comcast Metrophone,
18 F.Supp.2d 524 (E.D. Pa. 1998) ..............................................................................................2

## I.     **INTRODUCTION**

On November 12, 2003, Plaintiff Jerold Washington ("Plaintiff" or "Washington") served his opposition to Defendant National Railroad Passenger Corporation's ("Amtrak") Motion for Summary Judgment.[1]  In that Opposition, Plaintiff – with minimal and at times nonexistence citation to the record – distorts and mischaracterizes the evidence adduced in this case in an effort to create an issue of fact where none exists.  Indeed, Plaintiff patently ignores the crucial undisputed facts of this case – that Plaintiff complained only about the conduct of his co-worker James Hogan, that Amtrak immediately investigated each and every one of Plaintiff's allegations and that Amtrak promptly responded to Plaintiff's complaint and sought the most severe sanction possible or Mr. Hogan, termination.  Indeed, this is a case where the employer did everything right.  Plaintiff also fails to identify <u>any</u> evidence that supports his racial discrimination claims, instead improperly attempting to place the burden of proof on Amtrak.

For these reasons, and the reasons set forth in Amtrak's initial Memorandum, Amtrak respectfully requests that this Court grant summary judgment on all of Plaintiff's claims and dismiss Plaintiff's entire Complaint and Amended Complaint with prejudice.[2]

---

[1]     Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("Amtrak's initial Memorandum") will be cited to herein as Def's Mem. at p. __.  Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Opposition) will be cited as Pl's Opp. at p. __.  Where possible, Amtrak has cited to documents or pages of documents attached as exhibits to its initial Memorandum of Plaintiff's Opposition.  Finally, all acronyms and shortened titles used herein are defined in Defendant's initial Memorandum.

[2]     At the end of his brief, Plaintiff disingenuously suggests that Amtrak improperly withheld information regarding a complaint of national origin discrimination made against it by an Irish American in its Lancaster Division.  This claim is false and misleading.  In fact, Plaintiff only requested information regarding claims of <u>race</u> discrimination and harassment.  (<u>See</u> Plaintiff's Request for the Production of

## II.    ARGUMENT

### A.    The Court Should Dismiss Plaintiff's Racial Harassment Claims Because Plaintiff Has Adduced No Evidence To Support A Finding Of Respondeat Superior Liability.

As noted in detail in Amtrak's initial Memorandum, to establish the existence of respondeat superior in cases, such as this one, in which co-workers are the alleged harassers, "a plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action." Weston v. Pennsylvania, 251 F.3d 427 (3d Cir. 2001) (citations omitted). "[T]o determine whether the remedial action taken was adequate, [the Court] must consider whether the action was 'reasonably calculated to prevent further harassment.'" Wragg v. Comcast Metrophone, 18 F.Supp.2d 524, 528 (E.D. Pa. 1998) (quoting Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997)).

Recognizing that Amtrak's response to his actual complaint of discrimination was not only legally sufficient but also laudable, Plaintiff argues that (1) Amtrak's policy against harassment was deficient; and (2) Amtrak's failure to discipline co-workers about whom Plaintiff did not complain rendered its response to Plaintiff's actual complaint inadequate. Moreover, in a desperate attempt to save his claims, Plaintiff purports to recast his allegations as claiming supervisory – rather than co-worker – harassment. Finally, Plaintiff purports to have alleged a viable claim for constructive discharge, which he erroneously believes precludes summary judgment of his racial harassment claim. As set forth below, each of Plaintiff's arguments is

---

Documents, attached hereto as Ex. A, at Reqs. 9, 14, 15, 32, 34, 35). Amtrak responded by providing Plaintiff with documents regarding Plaintiff's complaint and stating that no other claims for race discrimination or harassment were made in Lancaster since January 1, 1998. (See Letter from J. Nix, Esquire to A. Pandola, Esq., dated Feb. 11, 2003, attached hereto as Ex. B). These responses were appropriate and accurate.

unsupported by the record evidence and without merit.

1.    Amtrak's Policy Against Harassment Is Effectively Enforced Throughout The Company And, Specifically, At Its Lancaster Division.

In its initial Memorandum, Amtrak described in detail its strict policy against racial harassment and discrimination in the workplace. (See Def's Mem. at Sec. II.A). Plaintiff admits that Amtrak's prohibitions against harassment are effectively set forth in the Company's documented policies against harassment. (Pl's Mem. at 28-29). He also does not contest that Amtrak has dedicated an entire department within the organization – the DRO – to investigating and remedy employee complaints of discrimination and harassment.

Nevertheless, and without citation to the record, Plaintiff suggests that Amtrak did not enforce this policy or train its employees on this policy.[3] (Pl's Mem. at p. 28). This claim is directly refuted by the record. In fact, the undisputed testimony in this case proves that Amtrak trains every employee about its policy against racial harassment and discrimination in the workplace. (McCallum Dep., relevant portions of which are attached hereto as Ex. C, at pp. 33-35). Indeed, every Amtrak employee who was deposed in this case – including Plaintiff – has testified that they received such training and were fully aware that Amtrak would not tolerate racial harassment.[4] (See Washington Dep., Def's Mem. at Ex. B, at pp. 167-68; Reading Dep.,

---

[3]    Plaintiff's main argument here is that Amtrak did not respond effectively to his claim of harassment. Amtrak addresses the legal and factual deficiencies in that argument in Section II.A.2 below.

[4]    An example of Plaintiff's complete mischaracterization of the record appears on page 29 of Plaintiff's Opposition, where Plaintiff states – without citation – that "[Jerry] Herndon, has testified he is barely aware of the policy and does nothing to enforce it." This is untrue. Mr. Herndon, who was an Amtrak Deputy Division Engineer during the time relevant to this case, testified that he was familiar with Amtrak's policies against discrimination and harassment. (Herndon Dep, Ex. D, at pp. 15-19). He also testified that it was his job, upon a verbal or written complaint of harassment, to "follow up and to investigate and contact the diversity group (DRO) if necessary." (Id. at p. 16). Finally,

Def's Mem at Ex. C, at pp. 23-24; Rhodes Dep., relevant portions of which are attached hereto as Ex. E, at p. 28; Herndon Dep., Ex. D, at pp. 15-19). In addition to this training, which is conducted by Amtrak's DRO, Andrew McCallum, Amtrak's EEO Manager for the Northeast Corridor, also testified at length about how his department conducts specialized training for managerial employees regarding employment laws related to harassment and discrimination. (McCallum Dep., Ex. C, at pp. 33-35).

       Moreover, contrary to Plaintiff's suggestion, there is no evidence that Amtrak fails to enforce its policies against discrimination. To the contrary, Mr. Reading, the Lancaster Track Supervisor, testified that he is responsible for making sure that there is no harassment or discrimination at the Lancaster Division. (Reading Dep., relevant portions of which are attached hereto as Ex. F, at p. 52). He also testified that once he is aware of any problem, he conducts a preliminary fact-finding by receiving written statements from the parties involved and any potential witnesses and then he contacts DRO, which is charged with investigating complaints. (Id. at 52). Mr. Herndon, the Deputy Division Engineer over the Lancaster Division testified that he follows the same practice in enforcing Amtrak's prohibitions against harassment and discrimination. (Herndon Dep., Ex. D, at p. 16). Both Mr. Reading and Mr. Herndon followed this practice here, referring the matter to the DRO, which conducted a thorough investigation.

       Plaintiff attempts to distort the deposition responses of Bruce Rhodes, who was a Foreman in the Lancaster Track for a brief time in 2000, in an effort to show that Amtrak does not enforce its harassment policies. Plaintiff's counsel asked Mr. Rhodes general questions

---

Mr. Herndon testified that he attended a full day training course regarding Amtrak's policies against harassment, that he may have attended additional training and that he periodically receives memoranda from DRO regarding those policies. (Id. at 18-19).

about whether he had ever heard any "racial comments" or "racial jokes" at Amtrak. With respect to the "racial comments," Mr. Rhodes testified that he <u>never</u> heard a racial comment made to anyone. (Rhodes Dep. Ex. E, at p. 46). With respect to "racial jokes," Mr. Rhodes did <u>not</u> testify that he had heard such jokes – he only stated that he does not and would not pay attention to racial jokes. (<u>Id.</u> at 46-47). Plaintiff's counsel never followed up on this testimony. (<u>Id.</u>). He never adduced evidence regarding what "racial jokes," if any, Mr. Rhodes had heard; when, if ever, he had heard them and, if applicable, who said these jokes. (<u>Id.</u>). Instead, Plaintiff attempts to distort Mr. Rhodes testimony to suggest that Mr. Rhodes had observed harassment at Amtrak. To the contrary, Mr. Rhodes testimony on this point is clear. He never observed anyone express hostility toward a fellow co-worker. (<u>Id.</u> at 19). More importantly, he never saw anyone harass Plaintiff. (Id. at 35). Indeed, <u>Plaintiff himself does not claim that Mr. Rhodes harassed him or saw anyone else harass him</u>.

As the foregoing demonstrates, Amtrak maintains and enforces a strict policy against racial harassment, upon which it has trained all of its employees. As set forth below, Amtrak implemented this policy and promptly responded to Plaintiff's complaint against Mr. Hogan.

2.    Amtrak Responded Promptly With Effective Remedial Action To Plaintiff's Only Complaint Of Discrimination.

In its Initial Memorandum, Amtrak demonstrated its prompt remedial response to Plaintiff's only complaint of harassment. Plaintiff argues that this response was legally deficient because Amtrak focused its investigation only upon Plaintiff's allegations and did not discipline co-workers about whom Plaintiff never complained. This argument has no merit.

To survive summary judgment, Plaintiff must adduce evidence from which a reasonable jury could conclude that Amtrak's response <u>to Plaintiff's complaint</u> was not

reasonably designed to prevent any future harassment of Plaintiff. Knabe, 114 F.3d at 412-13

(holding that an employer's investigation of an response to a complaint of harassment need not

be perfect so long as it is designed to end future harassment). When an "employer's response

stops harassment, there cannot be Title VII liability." Kunin v. Sears Roebuck & Co., 175 F.3d

289, at 294 (3d Cir. 1999).

       Here, Plaintiff's attempt to discredit Amtrak's response to his complaint must fail

because Plaintiff never complained about the conduct of anyone other than Mr. Hogan. (See

Washington Dep., Def's Mem. at Ex. B, at pp. 174-76, 220-222). There is no question that

Amtrak responded immediately and effectively to that complaint. In fact, Plaintiff does not

dispute that Amtrak moved for Mr. Hogan's termination and insured that Plaintiff would never

work with Mr. Hogan again.[5] (Id. at pp. 183-85). Plaintiff even admits that he was satisfied with

Amtrak's response to his complaint about Mr. Hogan. (Id.).

       Plaintiff's attempt to discredit the investigation conducted by Amtrak's EEO

manager Andrew McCallum also suffers from fatal defects. First, Plaintiff confuses the purpose

of Mr. McCallum's investigation. Mr. McCallum was not responding to an employee's internal

complaint of harassment. Rather, Mr. McCallum investigated Plaintiff's PHRC Complaint for

the purpose of responding to the PHRC. (McCallum Dep., Ex. C, at pp. 9, 19, 77-78, 81). At the

time Mr. McCallum investigated Mr. Washington's PHRC charge, DRO had already conducted

its investigation and Mr. Hogan had already resigned after being appraised that Amtrak would

---

[5]     This response to the allegations against Mr. Hogan was without reproach. In fact, an
employer need not even discipline the alleged harasser in order to respond effectively to
an employee complaint – it need only respond to the complaint in a manner reasonably
aimed at preventing future harassment. See, e.g., Porchia v. Cohen, No. Civ. A. 98-3643,
1999 WL 357352, *7 n. 8 (E.D. Pa. 1999) (holding that "without proof of wrongdoing,
[Defendant] had no obligation to discipline [the alleged offender]") (emphasis added).

bring charges against him seeking his termination. (Id. at 79-80). In addition, Plaintiff was no longer working in Lancaster when Mr. McCallum undertook his investigation. Thus, Mr. McCallum's investigation is irrelevant to Plaintiff's current claims.

Moreover, Mr. McCallum – who is African American – did more than he was required to do. He independently went to Lancaster to assure that Amtrak had handled Plaintiff's complaint of harassment appropriately. Mr. McCallum reviewed the DRO investigation and visited the Lancaster Division to speak with Mr. Reading and Plaintiff's co-workers about Plaintiff's allegations against Mr. Hogan. (McCallum Dep., Ex. C, at pp. 9-15). During his investigation, Mr. McCallum specifically inquired as to whether there were any other racial problems in the Lancaster Division, and, consistent with the fact that neither Plaintiff nor anyone else had complained about any problems other than those involving Mr. Hogan, he was advised that there were not.[6] (Id. at 80-81). Mr. McCallum determined that Amtrak's prior investigation and response were appropriate, explaining that "[a] thorough investigation had been done by the Dispute Resolution Office and a recommendation had been made that this individual be brought up on charges."[7] (Id. at 24; see also id. at 14-15). Given the scope of Plaintiff's charge, Mr. McCallum's investigation and response were appropriate.

Moreover, the premise of Plaintiff's argument that Amtrak should have disciplined individuals other than Plaintiff – Plaintiff's suggestion that his co-workers lied to DRO – is not supported by the record. Plaintiff's co-workers simply advised Amtrak's DRO that

---

[6]    Plaintiff's PHRC Complaint only alleges harassment by Mr. Hogan. (See Wash. Dep., relevant portions of which are attached hereto as Ex. G, at Ex. 11).

[7]    Contrary to Plaintiff's suggestion in his Opposition, there was no need for Mr. McCallum to take notes of his conversations with Plaintiff's co-workers as he documented the results of his investigation in his position statement to the PHRC. (McCallum Dep, Ex. C, p. 10).

they could not corroborate Plaintiff's allegations that Mr. Hogan (1) made comments about a confederate flag sticker on a truck in the parking lot, and (2) held a noose up to Plaintiff and made a derogatory comment.[8]  Plaintiff himself admits that no one was on the bus when the noose incident allegedly occurred. (Washington Dep., Def's Mem. at Ex. B, at pp. 144-46).  As such, based on Plaintiff's own account, it is not surprising that no one could have corroborated his allegations about that incident.  Moreover, the two co-workers who spoke to DRO about Plaintiff's allegations regarding the confederate flag, Steve Hanby and Daryl Fulton, simply advised DRO that they did not recall hearing Mr. Hogan make the statements Plaintiff claimed that Mr. Hogan had made.  (See DRO Notes, Def's Mem. at Ex. A.5, at D00056).  Significantly, the statements from Mr. Hanby and Mr. Fulton were consistent with what Mr. Washington told DRO – that he was unsure whether anyone heard the comments Mr. Hogan allegedly made to him.  (Id.).  Thus, there is absolutely no evidence that these individuals were not being honest with DRO.  Indeed, Mr. McCallum's investigation confirmed this fact.  Although he could not remember the names of the co-workers with whom he spoke, Mr. McCallum testified that those co-workers simply told him that they had not witnessed any of Mr. Hogan's alleged conduct. (McCallum Dep., Ex. C, at pp. 12, 30-31)

In short, the record evidence clearly demonstrates Amtrak's prompt and effective response to Plaintiff' complaint of harassment.  It conducted a thorough investigation through the DRO and took action against the alleged harasser as a result.  Plaintiff is unable to demonstrate respondeat superior liability and he cannot prove even a prima facie case of racial harassment.

---

[8]     Despite Plaintiff's unsupported rhetoric that no one supported him in his claims, it is undisputed that one co-worker corroborated Plaintiff's claim that Mr. Hogan taped Plaintiff to the driver's seat of the bus.  (Def's Mem at Ex. A.5).

Accordingly, Amtrak respectfully submits that this Court should grant summary judgment on Plaintiff's racial harassment claim.

       3.      <u>Plaintiff Has Adduced No Evidence Of Harassment By Any Amtrak Supervisor.</u>

Plaintiff's counsel claims in Plaintiff's Opposition that Plaintiff can establish respondeat superior liability because he alleges, in conclusory fashion, that Plaintiff was "harassed" by Amtrak Foreman Bruce Rhodes.[2] (Pl's Opp. at p. 35). This claim fails for two independent reasons: (1) Mr. Rhodes was not a "supervisor" as that term is used in Title VII; and (2) there is no evidence that Mr. Rhodes ever engaged in any harassment of Plaintiff.

First, a "supervisor" within the meaning of Title VII is an individual who has the power to "hire and fire, and to set work schedules and pay rates." <u>Sicalides v. Pathmark Stores, Inc.</u>, No. Civ. A. 99-CV-3465, 2000 WL 760439, *7 n. 6 (E.D. Pa. Jun 12, 2000) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 803 (1998)). As another Court in this district has held:

> the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer.

<u>Glickstein v. Neshaminy School District</u>, 1999 WL 58578, *12-13 (E.D. Pa. Jan. 26, 1999) (quoting <u>Parkins v. Civil Constructors of Illinois, Inc.</u>, 163 F.3d 1027, 1034 (7th Cir. 1998)).

---

[2]    Plaintiff also attempts to support his allegations by referencing allegedly discriminatory remarks made to him by co-workers when he was in Lancaster during August 2000. (Pl's Opp. p. 7). Plaintiff does not make any citation to the record in making these broad allegations. (<u>Id.</u>). In any event, Plaintiff admits that he never complained to anyone at Amtrak about these statements. As such, Amtrak had no notice of the alleged harassment and respondeat superior liability cannot attach. <u>See</u> <u>Koschoff v. Henderson</u>, 109 F.Supp.2d 332, 348 (E.D. Pa. 2000), <u>aff'd.</u> 2002 WL 1271631 (3rd Cir. 2002) (holding that no respondeat superior liability exists for allegedly harassing conduct about which the plaintiff did not complain to management).

"The burden of proof to show that [the harasser] was plaintiff's supervisor lies with plaintiff." Kent v. Henderson, 77 F.Supp.2d 628, 633 (E.D. Pa. 1999) (citing Andrews c. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). Plaintiff has not met that burden. In fact, Mr. Rhodes testified that as a Foreman if he sees someone violating Amtrak rules, it is his job to report that violation the Lancaster Track supervisor, who deals with the situation. (Rhodes Dep., Ex. E, at p. 23). He does not have the power to discipline or fire Amtrak employees, or to recommend the same. (Id.). Moreover, he has no authority to hire people or assign employees to jobs. (Id. at 32). Accordingly, even if Plaintiff could demonstrate that he was harassed by Mr. Rhodes, he still would fail to assert a claim for supervisory harassment.

In any event, Plaintiff has never claimed that Mr. Rhodes harassed him. Nowhere in his deposition, Complaint, Amended Complaint or Initial Disclosures (a copy of which are attached hereto as Ex. H), does Plaintiff ever suggest that Mr. Rhodes harassed him. A close reading of Plaintiff's Opposition makes it clear that even now Plaintiff does not claim that Mr. Rhodes discriminated against him in any way. (Pl's Opp. at pp. 35-37). The sole basis for Plaintiff counsel's recent assertion that Mr. Rhodes harassed Plaintiff is Plaintiff's claim that Mr. Rhodes "was aware of the racial incidents concerning Mr. Washington and did not nothing about them." (Pl's Opp. at p. 35). There is no record support for that assertion, and Plaintiff provides none. However, even if Mr. Rhodes had failed to respond to Plaintiff's complaint – which he did not – this would not constitute affirmative "harassment."

Moreover, Plaintiff completely ignores the facts of this case in suggesting that Mr. Rhodes did not respond to his complaint. It is undisputed that Mr. Rhodes learned about Plaintiff's allegations against Mr. Hogan only after Plaintiff complained to Bernie Reading, the

10

Lancaster Track Supervisor.[10]  (Rhodes Dep., Ex. E, pp. 35-36).  As set forth in detail in

Amtrak's initial Memorandum, Mr. Reading, as Mr. Rhodes supervisor, initially conducted a

fact-finding about Plaintiff's claims and contacted DRO, who conducted the investigation of

Plaintiff's claims.  At that point, there was nothing for Mr. Rhodes to do other than tell Mr.

Reading and DRO what he knew about the allegations – which was nothing because it is

undisputed that he had not seen any of the alleged actions by Mr. Hogan.  (Rhodes Dep., Ex. E,

at p. 35).  Mr. Rhodes fully cooperated in DRO's investigation, providing a written statement

regarding his limited knowledge of Plaintiff's complaint.[11]  (Id. at 51-53).

   As the above demonstrates, Plaintiff's complaint of discrimination concerns only

co-worker harassment.  As such, Plaintiff must prove the existence of respondeat superior

liability – which he cannot do.  Accordingly, Plaintiff's racial harassment claim must fail.

---

[10]   Again, Plaintiff admitted that his only complaint of harassment to Amtrak was made to
     Bernie Reading.  (Washington Dep., Def's Mem. Ex. B, at 174-76, 220-222).

[11]   Plaintiff's claim that Mr. Rhodes' deposition testimony conflicts with his written
     statement to DRO is absurd.  In his statement, Mr. Rhodes explained, as he did at his
     deposition, that he or someone else put rope on the bus used to transport Lancaster
     Division Trackmen to work sites because it was used by Amtrak employees on the job.
     (Rhodes Dep. , Ex. E, p. 38, pp. 54-55).  He testified that on or about Halloween, he saw
     the ropes tied in the form of a noose and hung on the bus.  (Id. at 58)  Although Mr.
     Rhodes believed that the noose had been hung as a Halloween prank, he required that it
     be taken down because he did not want anyone to see the noose and "get the idea that
     somebody else in the gang didn't want him around for whatever reason."  (Rhodes Dep. ,
     Ex. E, p. 38, pp. 54-55).  Plaintiff improperly implies that Mr. Rhodes was referring to
     Plaintiff when he indicated why he required the noose to come down off the buss in
     October 2000.  (Pl's Opp. p. 36).  This implication is a complete mischaracterization of
     the record and false.  In fact, Mr. Rhodes testified – as did Plaintiff – that Plaintiff was
     not even working in Lancaster in October 2000, when Mr. Rhodes saw the noose on the
     bus.  (Id. at 58; see also Washington Dep., Def's Mem. at Ex. B, at 50-51).

4.    Plaintiff Cannot Assert A Viable Cause Of Action For Constructive Discharge.

Remarkably, Plaintiff claims that he need not demonstrate the existence of respondeat superior liability because he has alleged a constructive discharge. For the following reasons, this argument is without merit.

First, the mere fact that a plaintiff may claim constructive discharge does not relieve him of his obligation to prove respondeat superior liability. Plaintiff improperly relies upon the holding of Suders v. Easton, 325 F.3d 432 (3d Cir. 2003). Suders, simply discussed the application of an employer's affirmative defense to a claim of supervisory harassment. It did not discuss cases – such as this one – where only co-worker harassment is alleged. See Suder, 325 F.3d at 450 (noting the "crucial" distinction between harassment by co-workers and harassment by supervisors). Indeed, a claim of constructive discharge does not preclude a Plaintiff from their obligation to prove respondeat superior in a co-worker harassment case.

Moreover, the predicate for Plaintiff's reliance upon Suders is false. Plaintiff did not bring a separate cause of action for constructive discharge. Rather, as part of his claim of harassment, Plaintiff simply claimed that Amtrak "constructively discharged Plaintiff from his position at the Lancaster Division." (Complaint ¶ 36) (emphasis added). This claim is nonsensical. First, Plaintiff has provided no support for the contention that an employee can be constructively discharged from a position where he retained employment with the employer after losing that position. Indeed, to prove a claim of constructive discharge, Plaintiff must establish that he resigned employment under conditions "so intolerable that a reasonable person would have felt compelled to resign." Suder, 325 F.3d at 445-46. Plaintiff cannot meet this standard. He continued to work for Amtrak for 18 months after leaving his position in Lancaster. (Washington Dep., Def's Mem. Ex. B, at 54-63). Moreover, Plaintiff never resigned from his

12

that position. Rather, Plaintiff admits that he was <u>properly</u> bumped from that position by a more

senior member of his union. (<u>Id.</u> at pp. 186-87). As Plaintiff cannot prove that he resigned from

his position in Lancaster, he certainly cannot prove that he was "constructively discharged" from

that position.

Even if Plaintiff could claim that he resigned from his position in Lancaster –

which he cannot – the undisputed facts demonstrate that Plaintiff has adduced no evidence

supporting a claim for constructive discharge.[12] In order for the constructive discharge doctrine

to apply in a Title VII context, a plaintiff must prove that his employer "<u>knowingly permitted</u>

conditions of discrimination in employment so intolerable that a reasonable person subject to

them would resign." <u>Porchia v. Cohen</u>, No. Civ. A. 98-3643, 1999 WL 357352, *7 (E.D. Pa. Jun

04, 1999) (citing <u>Goss v. Exxon Office Systems Company</u>, 747 F.2d 885, 888 (3d Cir. 1984)). In

determining if a constructive discharge has occurred the court should apply an objective test.

<u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, 100 F.3d 1061, 1075 (3d Cir. 1996). Thus, a

plaintiff must demonstrate that from an objective viewpoint, the employer <u>condoned</u> acts of

discrimination which would violate Title VII. <u>See Maher v. Associated Services for the Blind</u>,

929 F.Supp. 809, 814 (E.D. Pa. 1996). However, "the mere fact that the plaintiff feels

uncomfortable or considers her working environment unduly stressful is an insufficient basis for

a constructive discharge claim." <u>Id.</u>

Here, it can hardly be said that Amtrak permitted any harassment to which

Plaintiff was subjected. To the contrary, as noted throughout Amtrak's moving papers, Amtrak

---

[12]    In the opening of his brief, Plaintiff also suggests that Amtrak "transferred" Plaintiff out
of the Lancaster Division twice during 2000. (Pl's Mem. at 1-2). This is untrue. In fact,
Plaintiff testified that he <u>voluntarily</u> bid out of Lancaster in both April and September of
2000. (Washington Dep., Ex. G, at pp. 50-51, 53).

responded immediately to Plaintiff's only complaint of harassment, conducted a thorough investigation through DRO, and moved to terminate the only individual about whom Plaintiff complained. When an employer responds promptly and effectively to a plaintiff's complaint of harassment, no constructive discharge claim can follow. See, e.g., Williams v. Caruso, 966 F.Supp. 287, 297-98 (D. Del. 1997) (granting summary judgment on constructive discharge claim where employer investigated Plaintiff's complaints of discrimination and promptly remedied those claims in a manner reasonable calculated to prevent future harassment).

Accordingly, Amtrak respectfully submits that the Court should grant summary judgment on Plaintiff's racial harassment claims.

**B.**    **The Court Should Grant Summary Judgment On The Disparate Impact Claim In Count IV Of Plaintiff's Complaint Because Plaintiff Has Abandoned That Claim.**

Plaintiff did not address Amtrak's argument that Plaintiff failed to adduce evidence in support of his disparate impact claim. Amtrak submits that Plaintiff's failure to address the deficiencies in his disparate impact claim constitutes an abandonment of that claim. For this reason, and the unopposed reasons set forth in Sec.III.C of Amtrak's initial Memorandum, Amtrak respectfully requests that this Court dismiss Plaintiff's disparate impact claim.

**C.**    **The Court Should Grant Summary Judgment On Plaintiff's Discrimination Claims.**

In its initial Memorandum, Amtrak established that Plaintiff's race discrimination claims should fail as a matter of law. Specifically, Plaintiff alleged that because of his race he was not awarded four Assistant Engineer positions[13] for which he applied, as well as a Boom Truck Operator position. Amtrak demonstrated that Plaintiff could not assert a prima facie case

---

[13]    The challenged Assistant Engineer positions were located in New York, Washington, D.C., Delaware and Philadelphia.

of race discrimination for any of these positions, and also failed to adduce any evidence that

Amtrak's legitimate nondiscriminatory reasons for not selecting Plaintiff for these positions was

a pretext for discrimination.

       1.     <u>The Boom Truck Position.</u>

          a)     <u>Plaintiff Did Not Properly Bid For The Boom Truck Driver Position.</u>

       Amtrak assigns it employees to open positions governed by Amtrak's CBA with

the BMWE according to the procedures set forth in the BMWE contract. Pursuant to that

contract, all BMWE positions are subject to a bid process and positions are awarded to the senior

qualified employee to bid for the position. (BMWE Contract, Def's Mem. at Ex. D, Rule 1, p.

25). With respect to BMWE positions advertised in the Lancaster Division, all bids are made to

and processed by an assignment office in Philadelphia. (Reading Dep., Def's Mem. at Ex. C, at

p. 19). Although he is the Lancaster Supervisor, Mr. Reading does not know when someone bids

for a job in the Lancaster Division and does not determine who is the senior qualified bidder

entitled to the job under the BMWE contract. (<u>Id.</u>).

       Despite this procedure, Plaintiff claims that he asked Mr. Reading to qualify him

for the job. (Washington Dep., Def.'s Mem. Ex. B, pp. 72-80). Even if true – which it is not –

Plaintiff did not follow the proper process by submitting a bid for the job.[14]  Accordingly,

---

[14]     In his Opposition, Plaintiff claims that Mr. Reading does not dispute that Plaintiff asked
him for the Boom Truck position. This is untrue. Mr. Reading testified, in no uncertain
terms, that he never had <u>any</u> discussion with Plaintiff about Plaintiff obtaining <u>any</u>
position in Lancaster. (Reading Dep., Ex. F, at pp. 26-28).

Plaintiff was not qualified for the position and he, therefore, cannot establish a prima facie case of race discrimination.[15]

        b)     Plaintiff Does Not Dispute That His Failure To Receive The Boom Truck Position Was Without Consequence.

Amtrak established in its initial Memorandum that Plaintiff's failure to get the Boom Truck position in Lancaster was without consequence. Plaintiff argues that he may bring a race discrimination claim based upon his failure to receive the Boom Truck position even though his failure to get that position had no practical affect on his employment with Amtrak. This is not true.

It is axiomatic that to assert a prima facie case of age discrimination, an employee must prove that he was subjected to a "materially adverse employment decision." Fallon v. Meissner, No. 02-1823, 2003 WL 1984696, *3 (3rd Cir. April 30, 2003) (emphasis added) (holding that refusal to transfer plaintiff to lateral position with no change in salary was not an adverse employment action); see also Shramban v. Aetna, 262 F.Supp.2d 531, 538 (E.D. Pa. 2003) (holding that lateral transfer with no change in salary was not an adverse employment action). Plaintiff simply cannot produce any evidence that he suffered a materially adverse employment action. In fact, it is undisputed that Plaintiff made the same amount of money in his Bus Driver position as he would have as a Boom Truck Driver. (Washington Dep., Def.'s Mem. Ex. B, p. 80). Moreover, William Brennamen, a member of Plaintiff's union, bumped into the Boom Truck Driver position before December 19, 2000.[16] (Reading Decl., Def.'s Mem. Ex. F,

---

[15]     For these same reasons, moreover, Plaintiff cannot refute Amtrak's legitimate nondiscriminatory reason for not offering Plaintiff the Boom Truck Driver position – namely, his failure to bid for the job.

[16]     Plaintiff notes that Mr. Reading's affidavit on this subject referred to the date upon which Mr. Brennaman bumped Mr. Lewis as occurring before December 19, 2003 instead of

¶¶ 1-4). As Mr. Brennaman had more seniority than Plaintiff, he would have bumped Plaintiff from the Boom Truck position as well. Id. As such, Plaintiff would not have held the Boom Truck job any longer than he did the Bus Driver job, from which he was bumped on December 4, 2000. Thus, Plaintiff's failure to receive the Boom Truck Driver position was not a "materially adverse employment action."

For these reasons, Amtrak respectfully requests that the Court grant summary judgment on Plaintiff's race discrimination claims relating to the Boom Truck Driver position.

2.    The Assistant Engineer Positions.

Amtrak also demonstrated that Plaintiff could not prove his prima facie case of discrimination regarding his failure to receive the Assistant Engineer positions about which he complains. Specifically, Amtrak established that Plaintiff has adduced no evidence giving rise to even an inference that Amtrak was motivated by discrimination when it decided against awarding him those positions.

In his Opposition, Plaintiff claimed that his allegation of racial harassment by a co-worker in Lancaster provided an inference that he was denied Assistant Engineer positions in New York, Delaware, Washington D.C. and Philadelphia because of his race.[17] Plaintiff, however, has adduced no evidence that even suggests that the assignment of individuals to the

---

before December 19, 2000. As Plaintiff realized in his Opposition, and as set forth in the exhibits attached to Mr. Reading's original Affidavit, this was a typographical error. Attached hereto as Exhibit I is an affidavit from Mr. Reading attesting to that error.

[17]    In his Opposition, Plaintiff notes that Amtrak did not produce statistical records regarding the racial composition of its Assistant Engineer workforce and other related information. Plaintiff previously sought this information in a Motion to Compel filed on March 12, 2003. This Court denied that Motion to Compel, and ordered Plaintiff to produce affirmative information about the specific positions which he sought while at Amtrak. (See Order, dated May 9, 2003). Plaintiff never complied with this Court's Order.

Assistant Engineer positions had any connection to his complaint of discrimination.  In fact, that assignment was not handled by anyone involved in Mr. Washington's employment in Lancaster, but rather was conducted through the assignment offices for the regions in which Mr. Washington applied for positions.

Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860 (3rd Cir. 1986), cited by Plaintiff, is inapposite.  Contrary to Plaintiff's suggestion, the court in Pollack did not consider allegations of harassment unrelated to the alleged discriminatory practice in determining whether the plaintiff had proven a prima facie case of race discrimination.  Rather, in Pollack, the plaintiff presented evidence that similarly situated white employees were treated differently than the plaintiff.  In fact, at least one such white employee submitted an affidavit corroborating plaintiff's allegations and explaining how he was treated differently than the plaintiff.  Id.  By contrast, Plaintiff has presented no evidence that similarly situated individuals were treated differently.  Plaintiff completely ignores his burden of providing evidence relating to the Assistant Engineer positions in New York, Delaware and Washington D.C.  His only "evidence" is his unsupported speculation that he is "as qualified" as the person who received the Philadelphia Engineer position in April 2002, which cannot prevent summary judgment.

Moreover, Plaintiff has not adduced any evidence that Amtrak's legitimate nondiscriminatory reason for not assigning him to the Assistant Engineer position was a pretext for discrimination.  As set forth in detail in Amtrak's initial Memorandum, Amtrak did not hire Plaintiff as an Assistant Engineer because better qualified candidates applied for and received the jobs for which Plaintiff applied.  As noted above, Plaintiff did not make any effort to establish pretext with respect to Amtrak's reason for not hiring Plaintiff as an Assistant Engineer in New

York, Washington D.C., or Delaware.  Accordingly, the Court should grant summary judgment of Plaintiff's race discrimination claims regarding these positions.[18]

With respect to the Philadelphia position filled in May 2002, Plaintiff alleges that there is no evidence that Barry Kaltenstein, one of two individuals who received the Philadelphia Assistant Engineer position for which Plaintiff applied, was better qualified than Plaintiff.[19] (Pl's Opp. at p. 44).  In support of this argument Plaintiff cites to the employment applications of Mr. Kaltenstein and Plaintiff and, in a conclusory fashion, states that there is "no distinct difference" between those individual's background and employment history.

Plaintiff's attempt to compare the two applications is flawed.  "It is [the decisionmaker's] perceptions that count, and not what the plaintiff claims is the objective truth." See Cohen v. Pitcairn Trust Co., No Civ. A. 99-5441, 2001 WL 873050, at *7 (E.D. Pa. June 20, 2001) (emphasis added).  "Disagreement with the defendant's decisions is insufficient, as a matter of law, to survive summary judgment." Id.  Plaintiff must produce evidence that the legitimate nondiscriminatory reason is not only wrong but "was so plainly wrong that it cannot have been the [Amtrak's] real reason." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Plaintiff has not met his burden.  In fact, a review of the application of Plaintiff and Mr. Kaltenstein reveals that Mr. Kaltenstein has a certification in Electronic Engineering Technology and that he was already serving as a Passenger Conductor when he applied for the

---

[18]     Unlike the Boom Truck Driver position, the Assistant Engineer positions are not BMWE positions and, therefore, are not filled on the basis of BMWE seniority.

[19]     Plaintiff conveniently ignores that fact that there were two Philadelphia Assistant Engineer positions filled from the same pool of applications in May 2002.  While one position went to Mr. Kaltenstein, the other went to Steve Bowman, who is African American.  (See Offer Letter to Steve Bowman, attached hereto as Ex. J; Chart listing Bowman as African American, attached hereto as Ex. K).

Assistant Engineer position in Philadelphia. (See Pl's Opp. at Ex. 5). Plaintiff neither had the certification nor the experience as a conductor (he worked on a gang repairing tracks). (Id.). Tellingly, Plaintiff has taken no depositions about Amtrak's decision not to provide Plaintiff with the Philadelphia Assistant Engineer position, or any other Assistant Engineer position he has sought. "To make out a *prima facie* case of discrimination requires more than . . . speculation." See <u>Bullock v. Children's Hosp. of Philadelphia</u>, 71 F.Supp.2d 482, 489 (E.D. Pa. 1999). Plaintiff simply does not create an inference that Amtrak's decision not promote Plaintiff to position of Assistant Engineer was discriminatory. Accordingly, this Court should dismiss Plaintiff's discrimination claims related to the Assistant Engineer positions in New York, Washington, D.C., Delaware and Philadelphia.

### III.    <u>CONCLUSION</u>

For the forgoing reasons, Defendant National Railroad Passenger Corporation respectfully requests that the Court grant its Motion for Summary Judgment Against Plaintiff and dismiss all remaining claims with prejudice.

Judith E. Harris, Esquire ( I.D. #02358)
William J. Delany (I.D. #74864)
Paul C. Evans (I.D. #84535)
1701 Market Street
Morgan, Lewis & Bockius LLP
Philadelphia, Pennsylvania 19103
(215) 963-5000

Attorneys for Defendant
National Railroad Passenger Corporation

Dated:  November 26, 2003